IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FLINT HILLS TALLGRASS PRAIRIE
HERITAGE FOUNDATION,

        Plaintiff,

        vs.                     Case No. 05-1025-JTM

SCOTTISH POWER, PLC;
PACIFICORP; PPM ENERGY, INC.;
GREENLIGHT ENERGY, INC.;
ELK RIVER WINDFARM, LLC; AND
THE EMPIRE DISTRICT ELECTRIC
COMPANY,

        Defendants.

## MEMORANDUM AND ORDER

    This matter comes before the court on the defendants' Motion to Dismiss (Dkt. No. 20),

in which the remaining defendants joined (Dkt. Nos. 26 and 27).   Plaintiff Flint Hills Tallgrass

Prairie Heritage Foundation, Inc., brought a class action complaint alleging that the construction

of industrial wind turbine power generating facilities will cause permanent and irreparable

damage to the Flint Hills regional environmental system.  Defendants move to dismiss with

prejudice pursuant to Fed.R.Civ.P. 12(b)(6) arguing that: 1) plaintiff's constitutional claim may

not be maintained against private parties; and 2) the Migratory Bird Treaty Act, 16 U.S.C.A. §

701, *et seq*. (hereafter "MBTA") does not provide a basis for the action.

**I. STANDARD OF REVIEW**

In reviewing a motion to dismiss, the court determines the legal sufficiency of plaintiff's complaint.  Sutton v. Utah State School for the Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) citing Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991).  "A Rule 12(b)(6) motion to dismiss will be granted only if it appears beyond a doubt that the plaintiff is unable to prove any set of facts entitling [him] to relief under [his] theory of recovery."  Poole v. County of Otero, 271 F.3d 955, 957 (10th Cir. 2001) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The court must accept all the well-pled allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  Boyd v. Runyon, No. 94-1557-JTM, 1996 WL 294330, at *1 (D. Kan. May 23, 1996) (citing Williams v. Meese, 926 F.2d 994 (10th Cir. 1991)).  "The [c]ourt, however, need not accept as true those allegations that are conclusory in nature, i.e., which state legal conclusions rather than factual assertions."  Fugate v. Unified Gov't of Wyandotte, 161 F. Supp. 2d 1261, 1263 (D. Kan. 2001) (citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

**II. ANALYSIS**

**A. Federal Jurisdiction**

**1. Under Color of State Action**

Defendants argue that plaintiff's action cannot be maintained against private actors. Plaintiff responds that federal jurisdiction exists because the federal and state tax incentives defendants received create a "color of state action."  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978).

For a private party to act under color of law, two conditions must be satisfied: 1) the

deprivation of the federal right must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible; and 2) the private party must act together with or obtain significant aid from state officials or engage in conduct otherwise chargeable to the State.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 932-35, 102 S.Ct. 2744, 2751-52, 73 L.Ed.2d 482 (1982).  "Generally, with respect to the first condition, state action or action under color of state law will not be found where the only conduct alleged is the private person's use of state-sanctioned remedies or procedures." Reuben H. Donnelley Corp. v. Brauer, 275 Ill.App.3d 300,304, 655 N.E.2d1162, 1166, 211 Ill. Dec.779, 783 (Ill.App. 1 Dist. 1995).

The Supreme Court and the lower courts have substantially limited the expansive language of Lugar.  See, e.g., Lugar, 457 U.S. at 939 n. 21, 102 S.Ct. at 2755 n. 21; Read v. Klein, 2001 WL 20818, at *6 (10th Cir. Jan 9, 2001) citing 1 Martin A. Schwartz § John E. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees, § 5.14, at 291 (2d ed. 1998) (noting the careful limitation of the Lugar test to prejudgment seizure of property); Steele v. Stephan, 633 F.Supp. 950, 952 (D. Kan. 1986); Long v. Citizens Bank & Trust Co. of Manhattan, 563 F.Supp. 1203, 1215, (D. Kan. 1983).   In Lugar itself, the Supreme Court stated that: "[w]e do not hold today that 'a private party's mere invocation of state legal procedures constitutes "joint participation" or "conspiracy with state officials satisfying the § 1983 requirement of action under color of law'." Lugar, 457 U.S. at 939 n. 21, 102 S.Ct. at 2755 n. 21.   In this district's review, U.S. District Court Judge Saffels noted that "Lugar is limited to the particular context of prejudgment attachments." Steele v. Stephan, 633 F.Supp. 950, 952 (D. Kan. 1986).  See also Long v. Citizens Bank & Trust Co. of Manhattan, 563 F.Supp. 1203, 1215,

(D. Kan. 1983) (applying <u>Lugar</u> to a private party *creditor* who had properly invoked the statutory scheme and whose actions of deprivation of property interest could be properly traced to the statutory scheme).

Despite plaintiff's extensive citation of <u>Lugar</u>, plaintiff fails the first prong of the <u>Lugar</u> test.  The court cannot discern a deprivation of a federal right based on defendants' use of federal and state tax incentives.  If the court were to affirm plaintiff's expansive reading of <u>Lugar</u>, any private entity that acquires a license or derives benefit from a state regulatory scheme could implicate Lugar's standard for state action.  As defendant notes, the proper defendant for a challenge to a state exemption would be the government that enacted the exemption, rather than the private recipient.  <u>See, e.g.</u>, Penden v. Kansas, 261 Kan. 239, 930 P.2d 1 (1996). Furthermore, plaintiff fails to cite a case beyond <u>Lugar</u> itself that would allow the court to press forward in recognition of a constitutional right to a "salubrious environment."  <u>See</u> Dkt. No. 29, at p. 11.  Thus far, the courts have not recognized such a federal right, and this court declines to imply one.

### 2. Migratory Bird Treaty Act

Plaintiff fails to respond to defendants' argument that there is no cause of action, or at least a very limited cause of action, under the MBTA.  <u>See</u> 16 U.S.C.A. §§ 702-712.  Although the court views a motion to dismiss in the light most favorable to plaintiff, the court will not make plaintiff's arguments.  <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[T]he court need accept as true only the plaintiff's well plead factual contentions, not his conclusory allegations); <u>Moten v. American Linen Supply Co.</u>, 155 F.R.D. 202, 204 (D. Kan. 1994) <u>citing</u> <u>Associated General Contractors v. California State Council of Carpenters</u>, 459 U.S. 519, 526,

103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983) (footnote omitted) ("These deferential rules [of

pleading], however, do not allow the court to assume that a plaintiff 'can prove facts that it has

not alleged or that the defendants have violated the ... laws in ways that have not been

alleged..'"). See also D. Kan. R. 7.4 (failure to respond "shall constitute a waiver of the right to

file such a brief or response"). Plaintiff's only mention of the MBTA is in the discussion of an

equitable remedy, which the court reviews in the next section. As a result, the court finds that

plaintiff fails to state a cause of action under the MBTA. See Sierra Club v. Martin, 933 F. Supp.

1559, 1566 (N.D. Ga. 1996) rev'd 110 F.3d 1551 (11th Cir. 1997); Center for Biological

Diversity v. Pirie, 201 F. Supp.2d 113, 117 (D.D.C. 2002) vacated by 2003 WL 179848, at *1

(D.C. Cir. Jan. 23, 2003).[1]

---

[1] In limited circumstances, the courts have permitted private causes of action against the
government under the Administrative Procedures Act ("APA"). In Sierra Club v. Martin, the
trial court found no basis for a private cause of action under the MBTA but found that plaintiffs
could bring a civil action against the federal permitting agency under the APA premised on
violation of the MBTA. Martin, 933 F. Supp. at 1566-1567. However, the Eleventh Circuit held
that the plain language of the MBTA does not subject the federal government to suit under the
APA, noting that the federal government is not a "person" for the purposes of the MBTA.
Martin, 110 F.3d at 1555-56. More recently, in Center for Biological Diversity v. Pirie, 201 F.
Supp.2d 113, 117 (D.D.C. 2002), a federal district judge found that no private right of action or
injunctive relief was available for violation of the MBTA, but such an action could be brought
under the APA against the Secretary of Defense and the Secretary of the Navy. Id. at 117. Based
on the purposes of the MBTA and the APA, the court granted a preliminary injunction so as to
halt all of defendants' military training that could potentially wound or kill migratory birds. Id.
at 123. However, the D.C. Circuit vacated the decision as moot because Congress introduced
legislation that authorized incidental taking of migratory birds during military readiness
activities. Center for Biological Diversity v. England, 2003 WL 179848, at *1 (D.C. Cir. Jan. 23,
2003) citing Bob Stump National Defense Authorization Act for Fiscal Year 2003, Pub.L. No.
107-314, § 315, 116 Stat. 2458, 2509-10 (2002). Both these cases involved private actions
directed against the federal government. Here, the plaintiff attempts to bring a private cause of
action against private parties. Plaintiff does not cite and the court cannot find precedent that
would permit plaintiff to bring such an action under the MBTA, which is largely viewed as a
criminal statute. See 16 U.S.C.A. § 707.

**B. Jurisdiction in Equity**

In resisting the motion to dismiss, plaintiff asks the court to review this case under its equitable jurisdiction.  Although federal district and appeals courts are creatures of statute, they possess the inherent equitable power of common law courts.  U.S. v. Brown, 331 F.2d 362, 365 (10th Cir. 1964).  "If they are ever stripped of judicial discretion in equitable proceedings they will be relegated to the standing of mere administrative enforcement agencies."  Id.  "An appeal to the equity jurisdiction of the federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity."  Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1333 (10th Cir. 1982) citing Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944).  The court's equity jurisdiction is broad, and "where the exercise of equity is necessary to effectuate congressional purpose, the court is not rigidly confined in its choice of remedies."  I. C. C. v. Beehive State Agr. Co-op., Inc., 575 F.2d 802, at 804 (10th Cir. 1978) citing Renegotiation Board v. Bannercraft Clothing Co. Inc., 415 U.S. 1, 16-20, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 290-92, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960).  However, the absence of a legal remedy does not always give the 'suitor free entrance to a federal court of equity.'  Atlas Life Insurance Company v. W. I. Southern, Inc., 306 U.S. 563, 569, 59 S.Ct. 657, 660, 83 L.Ed. 987 (1939).

Plaintiff engages in a detailed discussion of natural law to encourage the court to imply an equitable remedy in this matter.  However, just as the court cannot find a federal right to infer state action, the court cannot find a federal right that permits the court to review this case in equity.  Instead of attempting to define a cognizable federal right, plaintiff relies heavily on the procedural history of the Florissant Fossil Beds Litigation to establish its statutory, constitutional

6

and equitable arguments.  In the 1969 case, a group of civic activists attempted to use the courts

to preserve a 34 million year old fossil bed located near Colorado Springs, Colorado, that

developers threatened to bulldoze.  Dkt. No. 29, at p. 14.  On review in the U.S. District Court

for the District of Colorado, the trial court denied plaintiff's application for a temporary

restraining order and a stay pending appeal.  Dkt. No. 29, at p. 17.  Plaintiffs then filed an

emergency stay with the Tenth Circuit Court of Appeals.  Dkt. No. 29, at p. 17-19.  The Tenth

Circuit granted the stay and even extended the stay to permit time for congressional action.  Dkt.

No. 29, at p. 19.  In the meantime, Congress, which had been considering legislation to convert

the Florissant Fossil Beds into a national monument, passed legislation to that effect.  Dkt. No.

29, at p. 22.  The Tenth Circuit's stay permitted Congress to pass legislation to preserve the

Florissant Fossil Beds.

Plaintiff's review of the Florissant Fossil Beds Litigation is a compelling story of civic

action.  While the efforts are laudable, the court stops short of finding the Flint Hills Tallgrass

Prairie case to be analogous.  Several important differences should be highlighted.  First, the

Florissant Fossil Beds included 6,000 acres of Oligocene period remains that had been

remarkably well-preserved.  The Flint Hills Tallgrass Prairie Ecosystem, on the other hand, has

undergone substantial development with the construction of roads, power lines and towns.

Second, the Tenth Circuit intervened in the Florissant case in part to permit Congress to act

where it had been dilatory.  Plaintiff does not cite any similar legislative initiative, either state or

federal, for the Flint Hills Tallgrass Prairie Ecosystem.  Rather, insofar as the court can infer

legislative intent, the court notes that the state and federal governments have attempted to

promote the use of wind power.  Through the passage of tax incentive programs, the state and

federal legislatures have attempted to encourage the development of alternative energy sources. Finally, the legislature has made considerable efforts to preserve the tallgrass prairie in the Flint Hills.  Legislation passed in 1996 established the Tallgrass Prairie National Preserve in the Flint Hills region.  See Tallgrass Prairie National Preserve Act of 1996, 18 U.S.C.A. § 698u (1996) (subsequently amended in 2000).  The preserve, which is more than 10,000 acres, has been until very recently under the joint management of the National Park Service and the National Park Trust.  With the national preserve and the tax incentives, the state and federal legislatures are attempting to balance development with preservation.  Since the legislative branch has already engaged in weighing priorities for the State of Kansas, the court will not engage in a re-weighing of these initiatives.  By so ruling, the court does not intend to foreclose all use of equitable remedies to preserve "unique national and international natural resources treasures."  The court merely finds that this is not a case warranting judicial intervention.

In conclusion, the court finds that there is no state action because plaintiff failed to identify an established federal right and failed to show that defendants acted under color of law. The court could not entertain plaintiff's case under the MBTA because plaintiff failed to demonstrate that it is entitled to bring a private cause of action under the statute.  Finally, based on plaintiff's complaint and response to the motion to dismiss, the court does not find this case to warrant federal equitable intervention.  While courts are accused from time-to-time of tilting at windmills, here the court has no legal basis for doing so, either literally or figuratively.

IT IS ACCORDINGLY ORDERED this 22nd day of February, 2005, that the court grants defendants' Motion to Dismiss (Dkt. Nos. 20, 26, and 27).

s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE

8